UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY L. CLEMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:09-cv-494-WTL-TAB |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Anthony L. Clemons requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). The Court rules as follows.

## PROCEDURAL BACKGROUND

Clemons protectively filed his application for a period of disability and DIB on October 25, 2005, alleging that he became disabled on February 2, 2005, due to obstructive sleep apnea, sinusitis, hypertension, degenerative disc disease, depression with features of narcissistic personality disorder, left medial neuropathy, and right elbow neuropathy. Clemons' application was denied initially and upon reconsideration. A hearing was then held before an Administrative Law Judge on July 14, 2008. The ALJ issued a decision denying benefits on December 11, 2008. The Appeals Council declined review, leaving the ALJ's decision as the final decision of the Commissioner.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to

result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent her from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that

of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion."  *Id.*

## FACTUAL BACKGROUND

Clemons suffered a work-related injury on February 2, 2005, after which he complained of persistent pain in his neck that radiated down his right arm.  In May 2005 he saw Dr. Renkens at the Indiana Spine Group.  After reviewing the results of an MRI, cervical x-rays, and an EMG, Dr. Renkens reported that Clemons had an annular tear or a foraminal disc in addition to spondylosis at the C6-7 level on the right side and diagnosed Clemons with C7 radiculopathy.  At Dr. Renkens' suggestion, Clemons underwent a selective nerve root block in June 2005.  When that failed to relieve his pain, he underwent a diskectomony and cervical fusion in July 2005; it, too, failed to relieve his pain.  A September 2005 MRI showed broad-based disc bulges and mild stenosis, but no evidence of cord flattening.  In October 2005 he underwent an MRI of the cervical spine, which revealed mild degenerative disc disease but no significant stenosis or foraminal narrowing, and in EMG of the right upper extremity which indicted mild carpal tunnel syndrome.  A CT myelogram showed moderate lateral foraminal stenosis with absent nerve root filling and probable disk bulges from C3-4 through C5-6.  In a follow-up visit following this testing, Clemons' treating neurologist, Dr. Josephson, noted that Clemons was "incapacitated"

by his continued neck and right arm pain.

In December 2005 an EMG of the left upper extremity showed evidence of mild carpal tunnel syndrome and an ulnar neuropathy at the elbow. In a follow-up visit following the EMG, Dr. Josephson, noted that Clemons' continued neck pain prevented him from working. Notes from an April 2006 visit with Dr. Josephson indicate his condition was basically the same. In August 2006, Dr. Josephson noted that Clemons' neck pain had not improved and that it rendered him disabled. On December 5, 2006, Dr. Josephson again opined that Clemons was disabled and advised him to file for disability benefits. He reiterated his opinion that Clemons was unable to work due to neck and arm pain on July 13, 2007, and December 7, 2007. On June 10, 2008, Dr. Josephson noted that Clemons was "unable to do any meaningful activity" due to his neck and arm pain, that he had an "intractable pain problem," and that he was disabled and unable to work.

In August 2007, Dr. Josephson referred Clemons to pain specialist Dr. Ratzman, who found that he had "multi-level cervical spondylosis and may have pain arising from the posterior elements of the cervical spine, i.e., the cervical facet joints. In addition, he does have significant scapular pain and may have some degree of thoracic spine pain." Dr. Ratzman recommended treatment with a TENS unit and some additional tests. In January 2008, Dr. Ratzman noted that Clemons had undergone a cervical facet radiofrequency neurotomy procedure to denervate the C5-6 and C6-7 facet joints in November 2007 but had obtained only mild improvement in his pain. The doctor noted that it was "likely that his pain is discogenic" and recommended a surgical reevaluation, as he thought he might be a candidate for cervical disc arthroplasty at C5-6.

In March 2008, a CT-guided cervical discography showed severe concordant neck pain with intradiscal injection at C5-6 and mild discordant provoked neck pain at C4-5. CT imaging showed an abnormality at C5-6 demonstrating internal derangement associated with bilateral uncovertebral joint contrast extension and a right posterolateral annular tear.

On January 12, 2006, Clemons was seen by Dr. Majid for a consultative examination for the state agency. Dr. Majid found limited range of motion in Clemons' cervical and lumbar spine, shoulders, wrists, and hips. His impressions were as follow:

1. Chronic neck and arm pain due to cervical disk disease, status post cervical fusion. The claimant would need regular exercise and pain control. His prognosis remains guarded in view of predominant pain symptomology.

2. Chronic low back pain. The claimant would need regular exercise and pain control. His prognosis remains guarded. There is no clinical objective evidence of nerve root, spinal cord or neurological deficits.

3. History of hypertension and depression.

Dr. Majid opined that Clemons "should at least be able to sit, stand and walk for 2-4 hours in an 8-hour day intermittently. His lifting, carrying and handling capacities would be limited to around 10-15 pounds. . . . His traveling would be somewhat limited because of arthritis and back pain." Record at 137.

On January 19, 2006, a physical residual functional capacity assessment was completed for the state disability agency. The agency physicians opined that Clemons was capable of light work with certain postural limitations.

## DISCUSSION

The ALJ found at step one that Clemons had not engaged in substantial employment since his alleged onset date of February 2, 2005. At step two, the ALJ concluded that Clemons

had the following severe impairments: obstructive sleep apnea, sinusitis, hypertension, degenerative disc disease, depression with features of narcissistic personality disorder, history of left medial neuropathy, and history of right elbow neuropathy. At step three, the ALJ concluded that Clemons does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. At step four, the ALJ determined that Clemons

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following restrictions: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand and walk for six of eight hours provided the work permits the individual to sit or stand at his or her option for one to two minutes per hour; no climbing of ropes, ladders, or scaffolds; no more than occasional climbing of ramps and stairs; no crawling or kneeling, no rapid head or neck movement and no repetitive forceful gripping or operation of vibrating tools; because of the possible side effects of medication and the distraction caused by pain and fatigue, no work around unprotected heights, around dangerous moving machinery, operating a motor vehicle or work around open bodies of water or open flames or extremes of temperature or humidity; only simple and repetitive tasks.

Record at 26. In light of this residual functional capacity, the ALJ concluded that Clemons was unable to perform his past relevant work as a truck driver. At step five, the ALJ found that considering his age, education, work experience and residual functional capacity, Clemons was capable of performing a significant number of jobs in the national economy, including information clerk, housekeeper, assembler, general office clerk, telephone quotation clerk, and electronic assembler. Therefore, the ALJ determined that Clemons was not disabled.

Clemons argues that the ALJ's finding that his neck pain is not disabling is erroneous because he failed to "consider and address medical source opinions" as required by SSR 96-8p. The Court agrees. The ALJ's decision contains a rather thorough summary of the evidence of record, including the repeatedly expressed opinion of his treating physician that he is unable to

6

work due to pain and the consistent opinion of examining consultant Dr. Majid that Clemons could sit, stand and walk for only 2-4 hours in an 8-hour day intermittently and lift and carry "around 10-15 pounds."[1] However, the ALJ chose to reject these opinions in favor of the non-examining state agency doctors' opinion–expressed through checking boxes on a form without any explanation–that he could perform light work with some postural limitations. The ALJ's explanation for this decision is as follows:

> I cannot accept his complaints of disabling pain and functional limitations. His symptoms are simply not of a persistence, frequency or severity to preclude all work activity. They are not supported by the objective evidence. . . The claimant's most severe problem appears to be his cervical spine status post fusion in July, 2005. He alleges this produced no relief in his neck pain or right upper extremity pain. He then developed some numbness and tingling in the left upper extremity. Neuropathy is confirmed by EMG, however, the cervical spine objective testing reveals basically mild findings. The neurological clinic findings have been primarily consistent and supported by the spine institute and pain clinic diagnoses. His neurological examinations have ben normal except for some decreased pinprick sensation in the right forearm and the right second, third, fourth and fifth fingers. He has normal strength and there are only several reports of any cervical limitation of motion. He is treated with TENS unit, injections, medications and physical therapy, and he reported to one examiner that he could live with the pain, so those modalities obviously provided some relief. However, I have accounted for cervical restrictions in assessing his residual functional capacity. The claimant's history of left medial neuropathy and right elbow neuropathy clearly pose some restrictions in use of those extremities, but not to the extent of precluding all work activity. On motor examination, he had no arm drift, weakness, fasciculations, tremors or abnormal tone and muscle strength reflexes were 2+ and symmetrical. His coordination was normal. The pain clinic bilateral arm evaluation related no gross abnormalities, no tenderness and full range of motion in the shoulder, arm and wrist along with stable joints. Further, there is no objective evidence the claimant is restricted to any less residual functional capacity than has been established. I cannot give controlling weight to the neurologist's statement of disability. It is not only not consistent with his extensive clinical findings, but also those of the other treating specialist's

---

[1] While this statement is a bit ambiguous, the most reasonable interpretation of it seems to be that Clemons is unable to work (which requires either sitting, standing, or walking) for more than 2-4 hours a day, which means he meets the definition of disabled.

7

>findings. The state agency examiners found that the claimant could do light work with postural activities limited to occasionally, which, with the additional aforementioned limitations is credited and adopted herein. This is consistent with his level of daily functioning which include taking care of his mother and daughter and his household with his daughter's help. He said he could carry a laundry basket and he is able to take care of, and play with, his dog.

Record at 30-31.

The problem with this analysis is two-fold. First, while the ALJ lists a litany of normal findings, the fact is that there is no medical evidence that these normal findings are in any way inconsistent with the disabling pain alleged by Clemons. More problematic is the fact that the ALJ's analysis fails to comply with his obligations under SSR 96-7p in finding Clemons' allegation of disabling pain to be not credible. That ruling provides that where, as here, the ALJ finds that a claimaint suffers from an impairment that could reasonably be expected to produce pain as alleged, the ALJ must articulate his reasons for discounting the allegation of disabling pain. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). Further, the ALJ "cannot discredit a complaint of pain simply because a plaintiff did not introduce objective medical evidence to support the extent of the pain." *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). Yet an examination of the ALJ's decision reveals that he did precisely that: he listed various objective evidence from Clemons' medical files and opined that it does not support his claim of disabling pain or the opinion of Dr. Josephson and Dr. Majid that he suffers from disabling pain. Aside from the lack of objective evidence, the only other reason the ALJ gives for his credibility determination is the fact that he could "take

care of his mother and daughter and his household with his daughter's help," carry a laundry basket, and take care of and play with his dog.  Putting aside the fact that the ALJ's finding that Clemons "takes care of his mother" is contradicted by Clemons' testimony–noted by the ALJ–that he does not "take care of his mother" and that his mother actually supports him financially, Record at 27 ("His mother, who is a factory worker, supports him."), nothing about these activities is inconsistent with the ability to work a full-time job.  *Cf. Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) ("But there is a deeper problem with the administrative law judge's discernment of contradiction. He failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.").

The ALJ failed to provide an adequate explanation for his credibility determination and for his decision to give more weight to the opinions of non-examining agency physicians than to the opinions of Dr. Josephson and Dr. Majid.  While those opinions are not entitled to controlling weight, *see* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."),  the ALJ was required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," SSR 96-8p, and therefore he was required to give a rational basis for his decision to reject them. The ALJ's failure to do so requires remand.  On remand, the ALJ also should fully consider the effects of Clemons' pain medications on his ability to work.

Clemons' remaining argument–that the ALJ erred in his determination that his condition does not equal Listing 1.04–is without merit, inasmuch as Clemons fails to point to any facts of record that would support a contrary finding.

## CONCLUSION

For the reasons set forth above, the Court **REVERSES AND REMANDS** this case for further proceedings consistent with this decision.

SO ORDERED: 08/31/2010

*[signature]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com,kew@hankeylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov